```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
```
**CENTERAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| IRA DEAN ROLAND, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | 5:20-CV-113-JMH |
| v. ) | |
| ) | **MEMORANDUM OPINION and ORDER** |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\* \*\* \*\* \*\* \*\*

Plaintiff Ira Dean Roland seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his application for disability insurance benefits (DIB) under Title II the Social Security Act (Act). Fully briefed (DE 10, 12 and 13), the matter is ripe for review.

Plaintiff applied for DIB in late 2016 (Certified Administrative Transcript. (Tr. 231). An ALJ's decision denying Plaintiff's application became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 83-93, 1-4). *See* 20 C.F.R. § 404.981. The Court has jurisdiction under 42 U.S.C. § 405(g).

**EVIDENCE BEFORE THE ALJ**

Plaintiff was 43 years old, in January 2016, when he alleged he became disabled due to a back injury. (*See* Tr. 244, 248). After a November 2015 workplace accident, Plaintiff's chiropractor, Dr. Jennifer Brooks, allowed him to return to work the next month (Tr. 748-50).

In January 2016, a low back MRI showed mild degenerative changes. (Tr. 415; *see* Tr. 356). The next month, orthopedist Dr. John Vaughan observed some tenderness and reduced range of motion in Plaintiff's lower back, but otherwise observed normal posture, leg strength, and gait. (Tr. 340). A low back CT study showed mild degenerative changes without nerve impingement. (Tr. 417-19; *see* Tr. 334, 356). Dr. Vaughan recommended pain management, not surgery. (Tr. 335).

In June 2016, independent medical examiner Dr. Ellen Ballard reviewed the record to evaluate Plaintiff's limitations for workers compensation. (Tr. 345-46). Video evidence showed that Plaintiff could walk across a parking lot, drive, and step up and down from a large truck (Tr. 345). Dr. Ballard opined that Plaintiff did not require any permanent restrictions. (Tr. 345-46).

In August 2016, Plaintiff saw neurologist Dr. Jason Hall for a second opinion about possible back surgery. (Tr. 351). Apart from a finding of low back tenderness, Dr. Hall's other findings

were normal; they consisted of full strength, intact sensation, normal reflexes, and a normal (negative) straight leg raise[1] (Tr. 351-52). Dr. Hall, like Dr. Vaughan, did not recommend surgery. (Tr. 352).

Later that month, Plaintiff began pain management. While there, a provider observed that, while Plaintiff had a tender low back, antalgic gait, and restricted range of motion, he nevertheless demonstrated normal strength, reflexes, sensation, and coordination. (Tr. 359). That same day, chiropractor Dr. Brooks opined that he could not return to work for a month and had a limited ability to do many workplace activities. (Tr. 747).

The next month, orthopedist Dr. Vaughan opined that Plaintiff's only workplace restriction was that he could not lift more than 40 pounds. (Tr. 795).

Plaintiff told pain management specialist Dr. Michael Harned in October 2016 that he had received only 10% pain relief with injections. (Tr. 367). Findings were normal, including normal gait and station, range of motion, stability, strength, reflexes, sensation, and straight leg raise. (Tr. 370).

---

[1] Negative straight leg raise tests indicate no nerve root impingement. *See Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 919 n.1 (6th Cir. 2011) ("A straight-leg raise test checks for radiculopathy, which is a term used to describe harm to spinal nerves.").

In March 2017, Plaintiff saw Dr. Gregory Nazar for a third opinion about whether he required surgery. (Tr. 399). An updated MRI showed mild-to-moderate narrowing of the nerve root openings, but no evidence of nerve compression. (Tr. 445-46; *see* Tr. 433). Dr. Nazar agreed with Drs. Vaughan and Hall that surgery would not be necessary. (Tr. 433).

Later that month, state agency medical consultant Dr. Donna Sadler reviewed the record to evaluate Plaintiff's abilities and limitations. (Tr. 149-52). *See* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation."). Dr. Sadler opined that Plaintiff had abilities consistent with a range of medium work, including the ability to sit for up to six hours in a workday. (Tr. 149-52). *See id.*, § 404.1567(c).

Other examination findings throughout the remainder of 2017 were mixed. At some visits, Plaintiff displayed low back tenderness, reduced strength and range of motion, decreased sensation, antalgic gait, or an abnormal straight leg raise. (*See* Tr. 459-60, 509, 518). At other times, he had normal posture, gait, strength, tone, and coordination. (*See* Tr. 488, 485-86, 483).

In September, after Dr. Harned implanted a temporary spinal cord stimulator, Plaintiff reported immediate improvement in his symptoms. (Tr. 528, 530). His pain was relieved by 70%, and he desired permanent implant of a spinal cord stimulator. (Tr. 535,

539). With this permanent implant, Plaintiff reported 55% pain relief in November. (Tr. 727). In December, re-programming the stimulator resulted in a 75% improvement in Plaintiff's pain. (Tr. 732). He also displayed normal gait, station, stability, strength, and sensation. (Tr. 731).

In 2018, providers most often recorded normal examination findings; including normal gait, posture, coordination, muscles, stability, sensation, and reflexes. (*See* Tr. 815, 743-44, 834, 831, 828, 823-24, 870; *but see* Tr. 831 (moderate low back tenderness), 864 (low back tenderness, limited range of motion, and positive straight leg raise)). Plaintiff was doing well enough that he made changes to his home in hopes of fostering a child. (*See* Tr. 848, 850-51).

At the hearing before the ALJ, in October 2018, Plaintiff testified that, even after the placement of his spinal cord stimulator, he "hurt all the time" (Tr. 107). He claimed that the spinal cord stimulator only "help[ed] a little." (Tr. 120). He said that he could not "sit very long without having to get up and take breaks" due to back pain. (Tr. 117).

## ALJ'S DECISION

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 85-92). *See* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found at step two that Plaintiff had impairments that qualified

as "severe" under the agency's regulations. (Tr. 85). Between steps three and four, the ALJ assessed Plaintiff's RFC, finding that he could perform a restricted range of sedentary work. (Tr. 87). *See id.*, §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(a)(defining sedentary work). At step five, the ALJ found that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy. (Tr. 91-92; *see* Tr. 126-27 (vocational expert testimony)). The ALJ thus concluded that Plaintiff was not disabled (Tr. 92). The Plaintiff sought review by the Appeals Council.

## ADDITIONAL EVIDENCE BEFORE THE APPEALS COUNCIL

As part of Plaintiff's request for review of the ALJ's decision, he submitted additional evidence to the Appeals Council. (Tr. 2, 8-74). The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision and/or did not relate to the relevant period. (Tr. 2). Plaintiff does not challenge that finding.

## STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 1154, 1157. The substantial evidence standard is even less

demanding than the "clearly erroneous" standard that governs appellate review of district court factfinding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999).

Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). A court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 713 (6th Cir. 2012). A court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## ANALYSIS

Although Plaintiff raises a number of arguments in his initial brief (DE 10), he makes just one in his reply brief. (DE 13). He contends argues that the ALJ should have found him disabled for a closed period between January 2016 and December 2017 (DE 13).

As an initial matter, the Court finds it strange that Plaintiff never asked the ALJ to find a closed period of disability during the administrative process. (*See* Tr. 190-91, 192-93). Nor did he ask the Appeals Council to find that the ALJ erred by not finding a closed period of disability. (*See* Tr. 230). Prior to the argument in this case, Plaintiff alleged that he was disabled during the entire period from January 2016 to January 2019; he testified before the ALJ that his spinal cord stimulator only "help[ed] a little." (Tr. 120). Yet, he now argues that the ALJ reversibly erred by not evaluating whether he was disabled for a closed period prior to implantation of the spinal cord stimulator. (DE 10). His argument is not well-taken.

The ALJ reasonably concluded that Plaintiff was not disabled for any continuous 12-month period between January 6, 2016, and January 28, 2019. (Tr. 92-93). This finding was consistent with the previously-discussed medical opinions of Drs. Ballard, Vaughan, and Sadler. And as discussed above, the ALJ reasonably explained why more restrictive opinions and Plaintiff's reported symptoms from throughout the relevant period were inconsistent with other evidence, and thus, could not support greater functional limitations or a finding of disability.

Plaintiff contends the ALJ sugarcoated the evidence from 2016 and 2017, while focusing on his significant improvement after implantation of the spinal cord stimulator. (DE 10). On the

contrary, the ALJ discussed the mixed evidence from throughout the relevant period, including the January 2016 lower back MRI, the March 2016 CT, Plaintiff's failed attempts to obtain pain relief, the March 2017 MRI, and mixed examination findings. (*See* Tr. 88-89). Boiled down to its essence, Plaintiff's argument asks the Court to re-weigh the same evidence examined by the ALJ but reach a different conclusion about what that evidence showed. The Court declines Plaintiff's invitation to overstep the limited bounds of its review. *See Ulman*, 693 F.3d at 713; *Tyra*, 896 F.2d at 1028.

As to Plaintiff's other arguments, the Court finds the record contains substantial evidence in the form of medical and vocational evidence to support the Commissioner's findings to the contrary. For example, between steps three and four, an ALJ assesses a claimant's RFC, which is the most he can do despite his impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 404.1546(c). The claimant bears the burden of showing that limitations should be included in his RFC assessment. *Clarification of Rules Involving Residual Functional Capacity Assessments,* 68 Fed. Reg. 51153-01, 51155 (Aug. 26, 2003) (comments to final rule). Here, far more than a scintilla of evidence supports the ALJ's finding that Plaintiff had the RFC to do a restricted range of sedentary work. (*See* Tr. 87-91). *See Biestek*, 139 S. Ct. at 1154.

In making his RFC assessment, the ALJ must address the claimant's reported symptoms (what was previously known as the credibility assessment). *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304. Plaintiff claimed to experience severe, potentially disabling, symptoms. Yet the ALJ gave a number of well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as he claimed (*see* Tr. 88-90). The ALJ cited objective medical evidence that was inconsistent with Plaintiff's reports of excruciating low back pain. (Tr. 88-89). *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."). In 2016, the low back MRI and CT showed mild degenerative changes without any nerve root encroachment. (Tr. 88; *see* Tr. 415, 417-19).

Although the 2017 MRI showed more significant degenerative changes, they were nevertheless described as only mild-to-moderate in severity. (Tr. 88; *see* Tr. 445-46). The ALJ likewise cited clinical findings of normal gait, station, strength, coordination, and reflexes in 2018. (Tr. 89 (citing Tr. 743, 824, 864)). While Plaintiff protests that these findings occurred far after the placement of his spinal cord stimulator, his argument ignores the

fact that similarly normal (or minimally abnormal) examination findings appear throughout the relevant period. (*see, e.g.*, Tr. 340, 337, 334, 351-52, 364, 370, 374, 485-86, 524, 538, 731). The ALJ also reasonably considered the fact that no doctor recommended surgery. (Tr. 88; *see* Tr. 337, 352, 433). While Plaintiff took medication, went to physical therapy, and received injections, the generally conservative nature of his treatment was inconsistent with his allegations of debilitating pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ considers the type of treatment when evaluating symptoms); SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Plaintiff argues that the ALJ did not consider his physical therapy, injections, acupuncture, and medications in 2016 and 2017; but the ALJ discussed his pursuit of these modalities. (*See* Tr. 88). And contrary to Plaintiff, more treatment does not inherently mean that a claimant's symptoms are more supported. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Further inconsistent to Plaintiff's claims was the effectiveness of treatment, especially his spinal cord stimulator (Tr. 88). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ considers the

effectiveness of treatment when evaluating symptoms). The ALJ recognized that, after placement of the stimulator, Plaintiff "reported significantly less pain in his back and left [leg]" (Tr. 89; *see* Tr. 732 (reporting 75% pain relief)).

Additionally, the ALJ found that Plaintiff's reported activities were inconsistent with his allegations of debilitating pain (Tr. 90). *See id.* § 404.1529(c)(3)(i) (ALJ considers a claimant's activities when evaluating symptoms). The ALJ discussed Plaintiff's ability to prepare meals, care for himself, help care for family pets, do household chores (including sweeping, laundry, and loading the dishwasher), drive, and go shopping (Tr. 90; *see* Tr. 283-85, 303). The ALJ also found that Plaintiff's reported symptoms were inconsistent with his ability to "work[] on their home to make it adequate for fostering children." (Tr. 90; *see* Tr. 850-51, 853, 856). Plaintiff argues that he did not foster a child because his back pain prevented it. (Tr. 89; *see* Tr. 732 (reporting 75% pain relief)).

Finally, the ALJ found that Plaintiff's reported activities were inconsistent with his allegations of debilitating pain (Tr. 90). *See id.* § 404.1529(c)(3)(i) (ALJ considers a claimant's activities when evaluating symptoms). As mentioned, the ALJ considered the many activities that Plaintiff was able to perform without difficulty. (Tr. 90; *see* Tr. 283-85, 303). Although Plaintiff contends that he never fostered a child, the ALJ cannot

be faulted for considering his intent to do so in weighing his subjective claims of excruciating pain.

## CONCLUSION

For the above-stated reasons, **IT IS HEREIN ORDERED** as follows:

(1) That the Commissioner's final decision be, and the same hereby is, **AFFIRMED**.

(2) That Defendant's motion for summary judgment (DE 12) be, and the same hereby is, **GRANTED**.

(3) That Plaintiff's motion for summary judgment (DE 10) be, and the same hereby is, **DENIED**.

(4) A separate judgment in conformity herewith shall this date be entered.

This the 20th day of August, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge